### ANDRUS v. BERKSHIRE POWER CO.

### HUGHES v. SAME.

(Circuit Court, D. Connecticut. April 21, 1909.)

#### Nos. 1,207, 1,209.

COSTS (§ 32*)—ALLOWANCE IN EQUITY—WHO IS PREVAILING PARTY.

Where a complainant was denied a mandatory injunction by a court of equity to compel the removal of a dam as prayed for, and although the court offered him the right to prove and recover his damages for flowage in the pending suit he refused to do so and prosecuted an appeal, which was unsuccessful, except that the appellate court gave him the same right, reversing the decree for that purpose, he is not entitled to recover costs incurred prior to the time when, after remand, he avails himself of such right.

[Ed. Note.—For other cases, see Costs, Dec. Dig. § 32.*

Right to costs in equity, see note to Tug River Coal & Salt Co. v. Brigel, 17 C. C. A. 368.]

In re Decree Following Mandates.

C. Walter Artz and Henry H. Townshend, for complainants.

Gross, Hyde & Shipman, for defendant.

PLATT, District Judge. The cases are respectively Andrus (1,207) and Hughes (1,209) against the Berkshire Power Company. To tell the whole story about them would be tiresome. The parties know it all, and the curious can follow the path, if they begin with (C. C.) 145

Fed. 47, and then go to 147 Fed. 78, 77 C. C. A. 248. Having read those cases, the outsider will know something about the Andrus Case. He can then go to (C. C.) 158 Fed. 219, and to (C. C. A.) 165 Fed. 1005, and may then consider himself introduced to the Hughes Case.

The mandates are now before me. The general nature of the decrees to be entered is easily ascertained, and the only real contention is about the costs. It is not customary to decide such a question at this time, and for that reason nothing will appear in the decrees about costs. What I am about to say is intended to indicate the attitude of the court, so far as the writer controls, and to explain why certain clauses of the suggested decrees filed by the plaintiffs cannot be passed in the form presented.

We will look at the Andrus Case a moment. The writer tried that case in open court to accommodate the plaintiff's counsel who, having his choice, selected it from a batch of three, as the one in which he thought he saw the easiest path to victory. The burden of his song during the trial was a cry for injunctive relief. He wanted a dam taken down which the defendant had built at Canaan, Conn. The maintenance of the dam meant a continuing trespass upon his client's meadow lands which formed a part of the river bank in Sheffield, Mass. It was (as he thought) wrongfully erected without his client's permission, and must come down. The defendant vigorously opposed his contention. At the close of the evidence the court informed the plaintiff and his counsel that in its opinion they were not entitled to the kind of injunctive relief which they so insistently demanded. They had come into a court of equity, however, and the court would gladly extend such aid to the injured as lay within its power. A master would be appointed to ascertain the plaintiff's damage, and having found it, the court would order the dam removed, if the amount were not paid within a reasonable time; or, if he preferred the plaintiff could go out of court and retain his right to a recovery of his damages at law. The offer of further chancery aid was briefly considered and then respectfully refused. The plaintiff and his counsel, with the true trading instinct, preferred to take chances on appeal from the refusal of mandatory injunctive relief. They took the chances, and lost twice; first in the Court of Appeals, and then in the Supreme Court. They are now back here asking for the original favor offered, which at the offering was treated as a stone, but which at this late day has evidently become in their estimation a substance capable of digestion and possible nutrition.

The costs become a matter of contention, because the decision of the Circuit Court of Appeals, although in fact an affirmance of the decision of this court, is in form a reversal. The plaintiff had his day in this court on the question of getting his damages through equity when the offer was made and refused as above recited, and it was an act of unusual kindness on the part of the Court of Appeals to give him another day. I do not know why they treated him so kindly; it may be that in the hurry of the moment the fact that the offer had been made was overlooked, or it may have been simply judicial friendliness. I cannot see that it was in any sense a right

which belonged to him. It is certain that the defendant did not find any fault with the original offer, and, in truth, their position demanded the acceptance by them of the offer, since their objection to the mandatory injunctive relief was based upon New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, which furnishes the basis for the equitable relief which was extended to the plaintiff. None of the costs incurred in an attempt to enforce mandatory injunctive relief were necessary to the obtaining of the relief formerly offered, refused, and now requested. I am, therefore, of the opinion that in the final adjustment the plaintiff will be entitled to no costs up to this stage of the proceedings, except those which may have accrued in the clerk's office in the regular way for the entry and continuance of the case, and that the defendant will be entitled to the costs to which it has been put by reason of the plaintiff's effort to obtain mandatory injunctive relief.

The record in the Hughes Case speaks for itself, and the same view as to costs applies thereto.

As I understand the law, the master will not be obliged to remain within the jurisdiction while listening to evidence, if convenience demands that he go elsewhere, and he has ample power in the way of calling for books and papers. If trouble ensues, he can easily come to the court for help.

It is thought that enough has been said so that the views of the court will be understood by all. The decrees can be easily prepared in accordance herewith.